IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

GARETH J. KNOWLES,                  :        Civil Action No. 4:11-CV-1257
                                    :
                                    :
            Plaintiff,              :        (Judge Brann)
                                    :
      v.                            :
                                    :
CAPITAL ONE BANK (USA), N.A         :
and CAPITAL ONE SERVIVCES,          :
LLC,                                :
                                    :
            Defendants.             :

**MEMORANDUM**
May 26, 2015

Pending before this Court are two Motions for Summary Judgment on

Plaintiff's Complaint and Defendants' Counterclaim, one filed by Plaintiff Gareth

J. Knowles (ECF No. 51) and the other filed by Defendants Capital One Bank

(USA), N.A. and Capital One Services, LLC (ECF No. 53).  Plaintiff's Complaint

seeks recovery for unauthorized charges on his credit card billing statement and the

damage to his credit rating based on Defendants' report to credit agencies that his

account was delinquent.  He makes these claims pursuant to the Fair Credit Billing

Act (hereinafter "FCBA"), the Fair Credit Reporting Act (hereinafter "FCRA"),

Pennsylvania's Unfair Trade Practices and Consumer Protection Law (hereinafter

"UTPCPL"), and the Virginia Consumer Protection Act (hereinafter "VCPA").

Defendants' Counterclaim seeks damages for breach of contract or, in the

1

alternative, unjust enrichment based on Plaintiff's alleged failure to pay for charges he undisputedly incurred but for which he did not pay.  The matter has been fully brief and is now ripe for disposition.

In accordance with the following reasoning, summary judgment is denied in its entirety on Plaintiff's FCRA claim, but is granted in favor of Defendants on Plaintiff's FCBA, UTPCPL and VCPA claims.  Additionally, summary judgment is granted in favor of Defendants on their breach of contract counterclaim; however, because of the Court's inability to verify the requested amount of damages, the Court will defer a determination of damages pending a more thorough exposition of the evidence supporting the enumerated amount.

## I. BACKGROUND[1]

In 1999, Plaintiff applied for and was issued a credit card account by Defendant Capital One.  Pl.'s Statement of Facts ¶ 1-2, August 25, 2014, ECF No. 51-3 (hereinafter "Pl.'s SOF").  Plaintiff's customer agreement for the credit card contains the following language:

> You promise individually and jointly to pay us all amounts due on your Account. . . . You must inspect each Statement you receive and tell us about any errors or questions you have as described in the "Billing Rights Summary" part of your Statement and other Truth in Lending Disclosures.

---

[1] Many of Plaintiff's assertions in his statement of facts do not contain citations to any portion of the record. According to the local rules, a motion for summary judgment must be accompanied by a separate statement of material facts which must include references to the parts of the record that support the statements.  L.R. 56.1; *see also U.S. v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").  Accordingly, this Court will only give credence to those facts in Plaintiff's Statement of Facts which cite to a portion of the record.

> If you do not notify us as provided in those disclosures, we may assume that all information in the Statement is correct.

Defs.' Statement of Facts ¶ 3, August 25, 2014, ECF No. 55 (hereinafter "Defs.' SOF"). Further, the Billing Rights Summary alluded to in Plaintiff's customer agreement stated:

> If you think your bill is wrong, or if you need more information on a transaction or bill, write to us on a separate sheet as soon as possible on the address for inquiries shown on the front of this statement. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can call our Customer Relations number or notify us by email or website, but doing so will not preserve your rights. In your letter, give us the following information: your name and account number, the dollar amount of the suspected error, a description of the error and an explanation, if possible, of why you believe there is an error; or if you need more information, a description of the item you are unsure about. You do not have to pay any amount in question while we are investigating it, but you are still obligated to pay the parts of your bill that are not in question. While we investigate your question, we cannot report you as delinquent or take any action to collect the amount you question.

*Id.* ¶ 5.

From January 2010 to March 2010, Plaintiff received a billing statement each month showing different unauthorized charges on his account. Pl.'s SOF ¶ 3, 6, 8. He called Defendants' customer service representatives several times in an attempt to rectify the illegitimate charges and to receive a corrected billing statement, although he had a difficult time getting through to the customer service representatives who he claims did not speak fluent English and could not adequately address his problem. *Id.* ¶ 5, 7; Def.'s SOF ¶ 7. Beginning in May

2010, Plaintiff allegedly began directing written correspondence to Defendants. Pl.'s SOF ¶ 10-11.  Defendants dispute that any written correspondence was directed to them prior to July 18, 2010. Def.'s SOF ¶ 9.

Plaintiff ceased making any payments on his account on February 25, 2010. Def.'s SOF ¶ 23.  Even though at the time Plaintiff only specifically disputed several charges on his account, he now insists that he disputed the entire account because he was unaware of the correct balance.  Pl.'s SOF ¶ 3,6,8; Def.'s SOF ¶ 9-12; Pl.'s Counter Statement of Facts ¶ 20, September 12, 2014, ECF No. 57-1 (hereinafter "Pl.'s Counter SOF").  Because of this failure to pay the account balance, Defendants began to charge him interest and late payment fees.  Pl.'s SOF ¶ 8, 13.

By the end of April 2010, Defendants had credited all but one disputed charge to Plaintiff's account. Def.'s SOF ¶ 14-16, 18.[2]  They also adjusted the interest, past due fees, and late payment fees in accordance with the credited amounts. *Id.* ¶ 17.  Several months later, Plaintiff's billing statement for the period of October 29, 2010 – January 27, 2011 reflected a credit for the final disputed charge. *Id.* ¶ 18.

Around the time that Defendants credited the final charge to Plaintiff's account, they reported his account as delinquent to consumer reporting agencies.

---

[2] This includes one charge for $234.25, which was credited back to Plaintiff's account and then subsequently rebilled when the merchant also credited Plaintiff's account that same amount for the same unauthorized purchase. Def.'s SOF ¶ 9, 12.

*Id.* ¶ 24.  Subsequently, Plaintiff filed credit reporting dispute information with several of those agencies regarding his account.  Pl.'s SOF ¶ 43.  Those filings generated several Automated Credit Dispute Verifications (hereinafter "ACDVs") from the agencies to the Defendants.  *Id.* ¶ 44; Def.'s SOF ¶ 27.  Defendants responded to the ACDVs shortly thereafter and indicated that the account was correctly reported as delinquent and that there was no dispute. Def.'s SOF ¶ 28; Pl.'s SOF ¶ 51, 53, 55.  Plaintiff denies that Defendants ever conducted any investigation into his allegations of dispute. Pl.'s SOF ¶ 50. The instant lawsuit followed.

## II. LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" where it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  A dispute is "genuine" where "the evidence is such that a reasonable jury," giving credence to the evidence favoring the nonmovant and making all inferences in the nonmovant's favor, "could return a verdict for the nonmoving party." *Id.*

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment.  *In re Bressman*, 327 F.3d 229, 237 (3d Cir.

2003) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986) (Brennan, J., dissenting)).  The moving party may satisfy this burden by either (i) submitting affirmative evidence that negates an essential element of the nonmoving party's claim; or (ii) demonstrating to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case.  *Id*. at 331.

Where the moving party's motion is properly supported, the nonmoving party, to avoid summary judgment in his opponent's favor, must answer by setting forth "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Anderson*, 477 U.S. at 250.  For movants and nonmovants alike, the assertion "that a fact cannot be or is genuinely disputed must" be supported by "materials in the record" that go beyond mere allegations, or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1); see also *Anderson*, 477 U.S. at 248–50.

"When opposing summary judgment, the non-movant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'"  *Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2003).  Furthermore, "[i]f a

party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2).

In deciding the merits of a party's motion for summary judgment, the Court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder, not the district court. *BWM, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

## III. DISCUSSION

### A. Fair Credit Billing Act

Both parties first request summary judgment on Plaintiff's claim under the FCBA. Defendant contends that Plaintiff's claim must fail because he did not comply with the express terms of the statute; that is, he did not provide them with written notice within sixty days of the issuance of even the last incorrect billing statement. Plaintiff responds that Defendants consented to notice by telephone and, further, that he did notify Defendants in writing within sixty days. He makes an additional argument that Defendants violated the FCBA by adversely reporting his account as delinquent to consumer reporting agencies without noting that it was disputed.

1. <u>Obligations under 15 U.S.C. § 1666</u>

The Fair Credit Billing Act was designed by Congress to protect consumers from inaccurate and unfair credit practices. *See Fairley v. Turan-Foley Imports, Inc.*, 65 F.3d 475, 477 (5th Cir. 1995).  It requires a creditor to correspond with a consumer and resolve billing differences in certain situations. *See Pinner v. Schmidt*, 805 F.2d 1258, 1264 (5th Cir. 1986); *see also Monica v. MBNA America Bank, N.A.*, Civil Action Nos. 06-cv-281 (PGS), 06-cv-761(PGS), 2006 WL 2040380, *3 (D.N.J. July 20, 2006).

The statute provides for several procedural requirements which must be followed in order to assert a claim.  To that end, the FBCA requires creditors to investigate and correct any charges erroneously billed to a consumer's account if the creditor receives written notice from the consumer of the alleged errors within sixty (60) days of the issuance of the statement containing those charges. 15 U.S.C. § 1666(a); *Burrell v. DFS Services, LLC*, 753 F.Supp.2d 438, 451 (D.N.J. 2010). The statute further requires that the written notice contain the name and account number of the obligor, the obligor's belief that the statement contains a billing error and the amount of that error, and the reasons for the obligor's belief that a billing error exists.  15 U.S.C. § 1666(a)(i)-(iii).

In this case, the charges that Plaintiff disputes appeared on three billing statements; the last of those statements was the March 1, 2010 – March 28, 2010

billing statement.  Defendants claim that this March billing statement would have been transmitted to Plaintiff by April 2, 2010.  Consequently, they contend that Plaintiff needed to provide written notice by or around June 2, 2010 in order to comport with the terms of the statute.  They further argue that they received no written notice from Plaintiff regarding the billing errors prior to July 18, 2010.

Plaintiff does not dispute that April 2, 2010 is approximately when he received his March billing statement.  He makes two arguments, however, with which he attempts to counter Defendants' contentions.  First, he argues that he provided written notice to Defendants prior to July 18, 2010, an assertion that he supports with a certified mail receipt dated on June 1, 2010 and a statement from his own deposition in which he states that he did send written notice of the billing disputes to Defendants.  Second, he claims that Defendants consented to notice by telephone, thereby negating the need that he provide them with written notice.

Plaintiff has, in fact, attached to his motion copies of certified mail receipts that he sent to Defendants.  However, he provides no evidence other than his word that the mail contained notice of billing errors and that it comported with the requirements of § 1666(a) regarding the substance of that notice.  Plaintiff has not attached the actual letters which were sent to Defendants and therefore this Court has no way of knowing what those letters contained and if they even discussed the billing inaccuracies.  Furthermore, Plaintiff's unsupported statement in his

9

deposition that he did in fact provide written notice of the billing disputes in a timely manner is insufficient to create a genuine dispute of material fact.  Again, Plaintiff has not satisfied his burden of proving what was in the writings that he sent to Defendants, and his own self-serving statement is insufficient on its own to create a genuine dispute.  With regard to Plaintiff's second argument, that Defendants' consented to notice by telephone, he has not cited to any law or any portion of the record which would support this claim and, consequently, this Court need not consider it.[3]

### 2. Obligations under 15 U.S.C. § 1666a

Plaintiff also argues that Defendants have violated § 1666a of the FCBA by adversely reporting his account as delinquent to consumer reporting agencies (hereinafter "CRAs") and failing to note that the account was disputed.  This argument necessitates little discussion.  15 U.S.C. § 1666a(a) states, in relevant part, "After receiving a notice from an obligor as provided in section 1666(a) of this title, a creditor or his agent may not directly or indirectly threaten to report to any person adversely on the obligor's credit rating or credit standing because of the obligor's failure to pay . . . and such amount may not be reported as delinquent. . . ." 15 U.S.C. § 1666a(a).  As this Court has already discussed, Plaintiff did not comport with the requirements of 15 U.S.C. § 1666(a), which is a statutory

---

[3] Though Defendants provided a telephone contact number for customers to utilize, this does not change the explicit requirements of the statute, as Plaintiff appears to suggest.

requirement for liability under 15 U.S.C. § 1666a.  Consequently, summary judgment is granted in favor of Defendants on Plaintiffs FCBA claims.

## B. Fair Credit Reporting Act

Both parties next request summary judgment on Plaintiff's claim under the FCRA.  Plaintiff contends that Defendants had a duty to conduct a reasonable investigation into the accuracy and completeness of the information that they provided to consumer reporting agencies following his report to the CRAs of a dispute.  In support of his summary judgment request, he argues that it is beyond question that Defendants' investigation into his reported disputes was unreasonable because they conducted no such investigation.  He further argues that Defendants' failure to report to the CRAs that his account was in dispute following their investigation constitutes an additional violation of the FCRA.

Defendants, on the other hand, argue that they correctly reported Plaintiff's account as delinquent, both in the first instance and following Plaintiff's reports to the CRAs of a dispute, because he had failed to pay charges on his account that he had undisputedly incurred.   Moreover, they contend that they had no obligation to report Plaintiff's account as disputed following their investigation because his

disputes were meritless and failing to report a meritless dispute does not give rise to a violation of the FCRA.[4]

The FCRA is intended "to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 1996).  Under the FCRA, CRAs collect consumer credit data from "furnishers," from which they create credit reports that are used to assess an individual's creditworthiness.  *See Seamans v. Temple University*, 744 F.2d 853, 860 (3d Cir. 2014).  Although the FCRA has several provisions which create liability for violations of the Act, only § 1681s-2(b) provides for a private citizen to recover damages caused by a furnisher of information. *See* 15 U.S.C. § 1681*o*; *see also SimmsParris v. Countrywide Financial Corp.*, 652 F.3d 355, 358 (3d Cir. 2011); *Seamans*, 744 F.3d at 864 ("Although furnishers . . . are obligated to provide complete and accurate information to CRAs even in the first instance, *i.e.*, before a dispute, under 15 U.S.C. § 1681s-2(a), FCRA explicitly precludes private suits for failure to comply with that statutory duty . . . and instead provides for enforcement of that provision by federal and state officials.").  That section states, in relevant part:

---

[4] Defendants do make an additional argument that the claim should be dismissed because Plaintiff identified it in his complaint as "credit damage."  They cite to no law for this proposition and this Court is aware of none, so the Court will not discuss the argument in this decision.

(b) Duties to furnishers of information upon notice of dispute

(1) In general

After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall –

(A) conduct an investigation with respect to the disputed information;

(B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;

(C) report the results of the investigation to the consumer reporting agency;

(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

(E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly –

(i) modify that item of information;

(ii) delete that item of information; or

(iii) permanently block reporting of that item of information.

15 U.S.C. § 1681s-2(b).  The duties under this subsection are implicated only after

a defendant furnisher has received notice of a dispute from a CRA with regard to

13

the completeness or accuracy of any information provided by a person to that or

any CRA. *See SimmsParris*, 652 F.3d at 358.

*Seamans v. Temple University*, a case recently decided by the United States

Court of Appeals for the Third Circuit, correlates almost entirely to the facts and

arguments in the case currently pending before this Court.   The plaintiff in

*Seamans* argued that the defendant had violated the FCRA in two ways: first, by

failing to conduct a reasonable investigation into his alleged dispute and second, by

failing to report his account as disputed following that investigation.  The Plaintiff

in the instant case makes the same two arguments and the Court will address each

in turn.

> 1. <u>Failure to Conduct Reasonable Investigation</u>

First, the court discussed the possibility that a plaintiff could prove an FCRA

violation by demonstrating that the defendant had failed to conduct a reasonable

post-dispute investigation.  *Seamans*, 744 F.3d at 864.  The Third Circuit has held

that a furnisher's post-dispute investigation into a consumer's complaint must be

reasonable. *See SimmsParris*, 652 F.3d at 359.  "[A] reasonable procedure is one

that a reasonably prudent person would undertake under the circumstances."

*Seamans*, 744 F.3d at 864-65 (citations omitted).  "The burden of showing the

investigation was unreasonable is on the plaintiff." *Noel v. First Premier Bank*,

Civil Action No. 3:12-CV-50, 2012 WL 832992, * 6 (M.D.Pa. Mar. 12, 2012)

(Conaboy, J.) (citing *Chiang v. Verizon New England Inc.*, 595 F.3d 26, 35 (1st Cir. 2010)).

In this case, Plaintiff has argued that Defendants conducted no investigation at all into his allegations of dispute. He has not cited to any portion of the record to support this assertion. Defendants, on the other hand, contend that their investigation was unquestionably reasonable. However, they have made only vague allegations as to what they did following the report of Plaintiff's disputes. The issue of reasonableness "is normally a question for trial unless the reasonableness or unreasonableness of the procedures is beyond question." *Cortez*, Without knowing more specifically how the Defendants responded to Plaintiff's allegations of dispute or, in Plaintiff's version of events, how he can prove that they did nothing to investigate his claims, the Court cannot determine at this juncture that the reasonableness or unreasonableness of the Defendants' investigation is beyond dispute.

## 2.  Failure to Report Account as Disputed Following Investigation

The *Seamans* court also discussed, for the first time, "whether a furnisher's continuing failure to flag an account as disputed also constitutes a violation of 15 U.S.C. § 1681s-2(b), which . . . requires complete and accurate post-dispute reporting of debts." *Seamans*, 744 F.3d at 866-67. The court ultimately concluded in the affirmative, holding that "the fact that a furnisher is affirmatively obligated

to flag an account as disputed under § 1681s-2(a) does not undermine the conclusion that a *failure* to flag the account as disputed also constitutes a material inaccuracy under § 1681s-2(b)." *Id.* at 867.

However, in order to establish that a defendant furnished an incomplete or inaccurate report by failing to report an account as disputed after such a report to a CRA, a plaintiff must prove that the dispute of which the defendant was aware was a meritorious dispute. *Id.* To that end, it is appropriate to use the requirements set out in § 1681s-2(a)(8)(D) and (F)(i) to determine whether a plaintiff's dispute was bona fide or meritless. *See Noel*, 2012 WL 832992 at * 9. The former section contains guidelines for a consumer's submission of a dispute to a furnisher, stating:

> A consumer who seeks to dispute the accuracy of information shall provide a dispute notice directly to such person at the address specified by the person for such notices that – (i) identifies the specific information that is being disputed; (ii) explains the basis for the dispute; and (iii) includes all supporting documentation required by the furnisher to substantiate the basis of the dispute.

15 U.S.C. § 1681s-2(a)(8)(D). The latter section clarifies that the defendant need not report a dispute "if the person receiving a notice of a dispute from a consumer reasonably determines that the dispute is frivolous or irrelevant, including – (I) by reason of a failure of a consumer to provide sufficient information to investigate the disputed information; or (II) the submission by a consumer of a dispute that is substantially the same as a dispute previously submitted by or for the consumer . . .

16

with respect to which the person has already performed the person's duties under this paragraph or subsection (b)." 15 U.S.C. § 1681s-2(a)(8)(F)(i).

In this case, Plaintiff alleges that Defendants failed to report his account as in dispute to CRAs, even after he filed a report of that dispute with the CRAs and after Defendants were required to investigate his claim.  The question, then, is whether Plaintiff's dispute was bona fide or meritless.  Defendants make two arguments in support of their contentions that Plaintiff's dispute was meritless and that it was therefore unnecessary for them to report the dispute to the CRAs.  First, they claim that under the provided definition of a frivolous or irrelevant dispute, they had already considered the dispute and there is no evidence that Plaintiff had raised any new issues.  This argument is tenuous.  Under § 1681s-2(a)(8)(F)(i)(II), a dispute is frivolous or irrelevant if the consumer has already submitted the same or substantially similar dispute *under § 1681s-2(b)*.  That subsection requires that the dispute be submitted through a CRA and not directly to the defendant furnisher.  There is no doubt that Plaintiff submitted notice of a dispute through the CRAs only once; notice of a dispute given directly to a furnisher is inapplicable under this definition of frivolous or irrelevant.

Second, Defendants argue that Plaintiff's dispute is meritless because it was untimely under the FCBA.  Defendants fail to recognize that there is no requirement of timing under § 1681s-2(b) of the FCRA similar to that under the

FCBA.  Though Defendants need not have taken any action on Plaintiff's untimely allegations of dispute under the FCBA, that does not necessarily dissolve their obligation to furnish to CRAs a report of Plaintiff's dispute which, as the Court has already discussed, was neither frivolous nor irrelevant.

The Court therefore concludes that it does not have enough information at this time to determine whether Plaintiff's dispute was meritorious or meritless. Specifically, neither party has clarified on what date Defendants credited the last disputed charge of $134 to Plaintiff's account; they have stated only that it was reported on the statement of October 29, 2010 – January 27, 2011.[5]   However, because they responded to the ACDVs sometime during November 2010, the Court is unsure as to whether the dispute was still outstanding at that time. Moreover, even if Plaintiff can prove that his dispute was still outstanding, it is a factual issue as to whether Defendants' failure to report the disputed charge to the CRAs caused his ultimate injury.  Consequently, both parties' motions for summary judgment on this claim are denied.

---

[5] The Court notes that Plaintiff has consistently stated in his deposition and arguments that he disputed the entire billing because Defendants would not provide him an updated billing statement.  The Court is skeptical of this argument.  In his discussions with the Defendants he made them aware of several charges which he believed were erroneous or the result of an internal processing error on Defendants part.  However, there were additional charges on his account that he did not specifically dispute.  Plaintiff cannot create a meritorious dispute as to his entire account by stating that he disputed some charges.  *See Klotz v. Trans Union, LLC*, 246 F.R.D. 208, 214 (E.D.Pa. 2007) ("A CRA must assume a consumer's dispute is bona fide, unless there is evidence to the contrary.  Such evidence may constitute receipt of letters from consumers disputing all information in their files without providing any allegations concerning the specific items in the files. . .").

## C. Pennsylvania UTPCPL

Next, Defendants seek summary judgment on Plaintiff's UTPCPL claim, arguing that Plaintiff has not established deceptive conduct, justifiable reliance, or causation, all of which are elements of a UTPCPL claim.  Plaintiff responds that Defendants' customer service mechanism is based on a "rules based question set" that was not only incapable of handling Plaintiff's problems, but also thwarted and prevented resolution of Plaintiff's dispute.  Moreover, he argues that the alleged violation is based upon telephonic conversations he had with customer service representatives of which no record was made by Defendants.  However, Plaintiff does not cite to any case law or any portion of the record in support of his contentions, nor does he argue the relevance of these assertions as they relate to Defendants' arguments.

The UTPCPL enumerates twenty "unfair methods of competition" and "unfair or deceptive acts or practices" that businesses are prohibited from engaging in. 73 P.S. § 201-2(4)(i)-(xx).  There is, further, a catch-all provision that prohibits any "fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 P.S. § 201-2(4)(xxi).  It is under this catch-all provision that Plaintiff brings his UTPCPL claim against Defendants.

"[T]he general purpose of the UTPCPL is to protect the public from fraud and unfair deceptive business practices." *Burke v. Yingling*, 666 A.2d 288, 291

(Pa.Super. 1995).  Accordingly, the act is to be construed liberally so as to effectuate that purpose. *See Wilson v. Parisi*, 549 F.Supp.2d 637, 666 (M.D.Pa. 2008) (Vanaskie, J.); *see also Keller v. Volkswagen of America, Inc.*, 733 A.3d 642, 646 (Pa.Super. 1999).  A 1996 amendment to the UTPCPL expanded the ambit of the catch-all provision to include not only fraudulent conduct, but also deceptive conduct.  73 P.S. § 201-2(4)(xxi).  The Third Circuit has interpreted this expansion to suggest that a plaintiff can prove a violation of the catch-all provision without proving all of the elements of common law fraud; rather, a plaintiff need only prove deceptive conduct. *See Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 498 (3d Cir. 2013); *see also Fazio v. Guardian Life Ins. Co.*, 62 A.3d 396, 406 (Pa.Super. 2012).  To that end, "[a] deceptive act is the act of intentionally giving a false impression or a tort arising from a false representation made knowingly or recklessly with the intent that another person should detrimentally rely on it." *Wilson*, 549 F.Supp.2d at 666 (citing *In re Patterson*, 263 B.R. 82, 94 (E.D.Pa. 2001)).

In addition to deceptive conduct, a UTPCPL plaintiff must also prove justifiable reliance on the defendant's deceptive conduct; that is, he must prove that he justifiably bought the product or service in the first instance, or that he engaged in some other detrimental activity because of the deceptive conduct. *See Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 222 (3d Cir. 2008); *see also Weinberg v. Sun Co.*,

777 A.2d 442, 445 (Pa. 2001).  Proving justifiable reliance requires that a plaintiff

establish more than "simply a causal connection between the misrepresentation and

the harm." *Id.* at 222.  Finally, a plaintiff must also prove that he suffered harm as a

result of that reliance. *See Johnson v. MetLife Bank, N.A.*, 883 F.Supp.2d 542, 548

(E.D.Pa. 2012) (quoting *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425,

438 (Pa. 2004)).

On this claim, it appears to the Court that Plaintiff is alleging Defendants

caused to exist an inadequate customer service mechanism which obstructed rather

than assisted his efforts to resolve the inaccurate charges on his account, despite

having advertised a high level of customer service.  It is this general advertisement

that Plaintiff appears to allege was deceptive.  Plaintiff has cited to no portion of

the record in his brief; however, even the unsupported assertions that he makes

regarding this customer service failure on Defendants' part would not be

considered deceptive conduct under the UTPCPL.  Specifically, Plaintiff has not

created a genuine dispute of material fact that Defendants intentionally gave him a

false impression as to the quality of their customer service experience when they

knew or should have known that impression to be false.  In fact, even assuming

Plaintiff did have a poor customer service experience,[6] he has presented no

---

[6] While Plaintiff insists that his customer service experience was horrible because he was forced to speak with foreigners who did not speak fluent English and consistently transferred his calls to different departments, the quality of his customer service experience is itself in doubt, given that Plaintiff's account was, ultimately, credited for all of the charges that he disputed.

evidence that Defendants knew that this would be the case when they advertised a high level of customer service.

Moreover, even assuming that Plaintiff justifiably relied upon Defendants' representations of high quality customer service, he has provided no genuine dispute of material fact that this reliance caused his ultimate injury.[7]  Specifically, this Court is unable to conceive of a situation in which reliance on customer service advertisements would cause Plaintiff to discontinue payment on his account and subsequently cause Defendants to report his account as delinquent to consumer reporting agencies.[8]  Consequently, summary judgment is granted in favor of Defendants on Plaintiff's UTPCPL claim.

**D. Virginia Consumer Protection Act**

Defendants further seek summary judgment on Plaintiff's claim under the VCPA, arguing first that banks are exempt from that Act and, moreover, that Plaintiff cannot demonstrate that the Defendant's committed fraud, a necessary element of a VCPA claim.  Plaintiff responds that only Defendant Capital One Bank (USA), N.A. is a bank; however, Defendant Capital One Services, LLC is not and therefore is not exempt under the Act.

---

[7] Because all of the unauthorized charges on Plaintiff's account were ultimately credited back to him, the only injury that the Court can discern that Plaintiff is arguing he suffered is the damage to his credit rating as a result of Defendants' reports that he was delinquent in paying his account balance.

[8] Again, while the Court understands that Plaintiff is alleging that his entire account balance was disputed and that is why he discontinued payment on his account, he has still provided no reasonable evidence or explanation as to how the advertisement caused this discontinued payment.  It would be an exceedingly tenuous causal connection to claim that Defendants' advertisement of quality customer service caused Plaintiff to think that his dispute would necessarily be resolved in his favor and that he could therefore stop paying for all of his purchases.

To state a cause of action under the VCPA, Plaintiff must establish: (1) fraud; (2) by a supplier; (3) in a consumer transaction. *See Enomoto v. Space Adventures, Ltd.*, 624 F.Supp.2d 443, 456 (E.D.Va. 2009).  To demonstrate the first element, a plaintiff must prove each of the elements of actual fraud. *See id.* (implicitly holding that the plaintiff had not pled a claim under the VCPA because he had not pled a claim of actual fraud).  Under Virginia law, actual fraud requires: (1) a false representation; (2) of a material fact; (3) made intentionally and knowingly; (4) with intent to mislead; (5) reliance by the party misled; and (6) resulting damage to the party misled. *See State Farm Mut. Auto. Ins. Co. v. Remley*, 618 S.E.2d 316, 321 (Va. 2005).

For many of the same reasons that this Court has already determined that Plaintiff has failed to establish a genuine dispute of material fact regarding his UTPCPL claim, he has also failed to establish any evidence of fraud to support a claim under the VCPA.  Accordingly, summary judgment is granted in favor of Defendants on this claim.

**E. Breach of Contract**

Finally, Defendants argue that they are entitled to summary judgment on their counterclaim for breach of contract or, in the alternative, unjust enrichment based on the credit card charges that Plaintiff legitimately incurred but has never paid for.  They seek $2,538.73, which they claim is the outstanding balance on

Plaintiff's account and is inclusive of late fees and interest.  In response Plaintiff

argues, again without citing to any law, that Defendants forfeited their rights to

collect any amounts from Plaintiff when they failed to send him a correct billing

statement as he had requested.[9]  Defendants contend that Virginia law governs

Plaintiff's customer service agreement and therefore governs the instant breach of

contract claim.  Plaintiff has not disputed this in any way and, in fact, Plaintiff's

customer agreement explicitly states that the agreement will be interpreted using

Virginia law.  Consequently, this Court will apply Virginia law to Defendants'

breach of contract claim.

Under Virginia law, a breach of contract action requires that the plaintiff

establish: (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the

defendant's violation or breach of that obligation; and (3) injury or damage to the

plaintiff caused by the breach of obligation.  *See Filak v. George*, 594 S.E.2d 610,

619 (Va. 2004); *see also Brown v. Harms*, 467 S.E.2d 805, 807 (Va. 1996).

This is a very straightforward breach of contract case.  In his customer

agreement, Plaintiff agreed to pay all amounts due on his account, inclusive of

interest charges and fees that could, at enumerated times, apply to his account such

as membership fees, late payment fees, overlimit fees, stop payment fees, copying

fees, cash advance fees, and transfer fees.  That customer service agreement

---

[9] Importantly, Plaintiff does not argue that he did not make these charges.

created a legally enforceable obligation to pay the Defendants for charges that he incurred with his credit card.  He failed to pay those charges and therefore breached his obligation, leaving Defendants responsible for the merchandise that Plaintiff bought but never paid for.[10]  Plaintiff's argument that Defendants forfeited their right to collect money for him when they failed to give him an updated billing statement has no basis in law or in the agreement that Plaintiff willingly signed. He cannot be permitted to make charges on a credit card and refuse to pay for them because he is unhappy with a customer service experience.  Consequently, summary judgment is granted in favor of Defendants on their breach of contract claim.  However, because the Court is unable to verify the amount requested by Defendants in their motion, the Court will defer judgment on the amount of damages pending a more thorough exposition of the evidence supporting Defendant's requested amount.

## IV. CONCLUSION

In accordance with the foregoing reasoning, summary judgment is denied in its entirety on Plaintiff's FCRA claim, but is granted in favor of Defendants on

---

[10] It is true that Plaintiff was not required, pursuant to the explicit terms of his customer agreement, to pay any amount in dispute while Defendants were investigating his claims.  However, under the terms of his agreement and the Billing Rights Summary, he was still obligated to pay for the charges he did not dispute.  This Court has already rejected Plaintiff's argument that his entire account was in dispute; while the total account balance may have been incorrect as a result of the erroneous charges, Plaintiff was still obligated to pay for the charges he incurred and which were not erroneous. Moreover, the Court finds Plaintiff's argument that he did not know what to pay without an accurate statement to be disingenuous because as the person using the credit card, he was in the best position to know which charges were correct and which were incorrect; Defendants could only know of the errors of which Plaintiff had informed them.  He cannot now state that he disputed the entire account as a reason why he was not required to pay his bill, when he only made Defendants aware of certain charges that he believed were incorrect.

Plaintiff's FCBA, UTPCPL and VCPA claims.  Additionally, summary judgment

is granted in favor of Defendants on their breach of contract counterclaim;

however, because of the Court's inability to verify the requested amount of

damages, the Court will defer a determination of damages pending a more

thorough exposition of the evidence supporting the enumerated amount.


BY THE COURT:


/s Matthew W. Brann
Matthew W. Brann
United States District Judge